IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUBA ADLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 07 C 4203 |
| | ) |
| EVANSTON NORTHWESTERN | ) |
| HEALTHCARE CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Luba Adler has sued Evanston Northwestern Healthcare Corporation (ENH), asserting claims for national origin and sex discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), age discrimination under the Age Discrimination in Employment Act (ADEA), and unlawful retaliation under Title VII and the ADEA. ENH has moved for summary judgment on all of Adler's claims. For the following reasons, the Court grants the motion in part and denies it in part.

### Facts

Because ENH has moved for summary judgment, the Court views the facts in the light most favorable to Adler and draws reasonable inferences in her favor.[1] *See,*

---

[1] In its reply brief, ENH moves to strike portions of Adler's Local Rule 56.1 statements. The Court has elected to consider all appropriate evidence submitted by Adler, regardless of her failure to strictly comply with the requirements of Local Rule

(continued...)

1

e.g., *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

Adler is a woman who was over the age of forty at all times relevant to this action. Though she was a citizen of the United States during her employment at ENH, she was originally born in Ukraine and subsequently moved to the United States. Adler was employed by ENH as a research associate in its pediatrics department from 1987 until 2004, when ENH eliminated her position due to funding problems. Adler has made no claim that her termination in 2004 was unlawful. On April 30, 2005, ENH rehired Adler as a research associate in its Breast Cancer Translational Research Center (BCTRC). Dr. Ruth Lupu was the director of the BCTRC during the time Adler worked there. Lupu and Dr. Javier Menendez, a research scientist at BCTRC, supervised Adler.

On August 31, 2005, Adler submitted a complaint, by letter, to ENH's human resources department (HR), concerning behavior by BCTRC employees, including Menendez. Earlier that day, Menendez yelled at Adler when she asked for guidance regarding her work, and then told her "'I REALLY HATE YOU AND YOUR FACE, AND YOU SHOULD CHANGE YOUR FACE.'" ENH Local Rule 56.1 Statement, Ex. I. Adler informed HR that the incident upset her so much that she was unable to continue working that day. In the letter, Adler also claimed that this incident was just the most recent event in a series by Menendez and two of his assistants, Dr. Luciano Vellon and

---

[1](...continued)
56.1. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (noting that district courts have discretion to overlook failure to comply strictly with local rules regarding summary judgment).

Adriana Papadimitropoulou. Adler claimed that Menendez, Luciano, and Papadimitropoulou (1) constantly spoke Spanish in front of non-Spanish speakers; (2) made "hateful anti-American comments"; (3) stated Adler was "very American and that all Americans are stupid"; (4) constantly raised the issue of her age and called her "too old"; (5) told Adler she was fat and made comments regarding her appearance; and (6) constantly used profanity that made her uncomfortable (though the profanity was not directed at her). *Id*. She claimed that Menendez and others suggested that Adler post her resume on a bulletin board so that everyone would know how old she was. On multiple occasions, Menendez told Adler she "was fat [and] eating salads didn't do [her] any good." Adler Local Rule 56.1 Statement of Additional Facts ¶ 16. Menendez also informed Adler that she looked like she was pregnant. Adler never heard any other employees' physical appearance, sex, or age discussed at BCTRC. Lupu did not engage in this conduct. ENH admits Adler was "outspoken about her love for her country and told her workplace colleagues that she was proud to be here, and was proud to be an American citizen." *Id.* ¶ 12.

Adler's August 31, 2005 letter was the first complaint she made about any inappropriate behavior at BCTRC. On September 13, 2005, ENH offered Adler a separation package including severance pay. The offer of a separation package was made to Adler several times. On September 22, 2005, Adler spoke with an HR employee, Christine Render, and sent HR a second letter, complaining that her work environment had "deteriorated" following the August 31, 2005 incident. ENH Local Rule 56.1 Statement ¶ 29. On September 27, 2005, Render and Bridget Sheridan, ENH's vice president of HR, conducted a comprehensive program on workplace behavior and

3

decorum for BCTRC employees.

Adler admits that after August 31, 2005, she did not hear any anti-American remarks made by her colleagues, no age or weight comments were directed at her, and use of profanity diminished at BCTRC. Instead, she claims that she experienced hostile treatment in other ways. She alleges that Menendez, in retribution for her complaints, refused to giver her information she needed to perform her job and that Lupu refused to intervene after Menendez did this. On another occasion, Adler contends, Menendez gave work-related instructions to BCTRC employees in Spanish but would not give the same instructions in English after Adler asked him to do so, even though he knew that she did not understand Spanish. Adler also complained to Sheridan, on October 25, 2008, that Lupu had treated her unfairly, inappropriately rebuked her in front of employees, increased her workload, withheld necessary training and instruction, provided incomplete and contradictory instructions, and otherwise interfered with Adler's ability to do her job. Adler repeated this to Sheridan on November 2, 2005.

ENH admits that there were no written evaluations of Adler's work performance at ENH and that, prior to September 15, 2005, Lupu was satisfied with Adler's job performance. Though Lupu does not have ultimate authority to hire or fire any ENH personnel, in the BCTRC she is the only individual who makes hiring and termination recommendations to ENH. On October 23, 2005, Lupu sent an e-mail to Sheridan complaining about Adler's performance and requesting Adler's immediate removal from BCTRC. Sheridan responded by informing Lupu that termination can only be carried out through ENH's designated process.

4

Adler was absent from work from November 7, 2005 through November 30, 2005. She claimed she was suffering from a respiratory illness during that time and provided a note from her doctor confirming she could not work during the period she was absent. Adler provided the note after ENH had made several requests for documentation of Adler's illness. ENH questioned the veracity of Adler's illness based on the timing of the doctor's note, surveillance it conducted during the time she was absent from work, and other allegedly suspicious circumstances.

Sheridan requested additional information from Adler regarding her illness several times in November and December 2005. Adler referred ENH to her attorney. Adler claims she responded to some of the inquiries, including requesting a meeting with an ENH officer and signing release forms that enabled ENH to obtain information from her doctor. Unsatisfied with the results of its investigation, ENH sent Adler a letter on December 27, 2005, stating that her employment was "terminated effective November 30, 2005 for providing false and misleading information to ENH and for refusing to cooperate in an investigation." ENH Local Rule 56.1 Statement, Ex. X.

**Discussion**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d

5

467, 471 (7th Cir. 2002).  A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

**1.      Employment termination**

Claims for discrimination under Title VII "may be proved either directly . . . or indirectly under the burden-shifting method established in *McDonnell Douglas*."  *Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).  The same standard is also used to evaluate ADEA claims.  *E.g.*, *Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 556 (7th Cir. 2001).  "The direct method of proof permits a plaintiff to show, by way of direct or circumstantial evidence, that his employer's decision to take an adverse job action against him was motivated by an impermissible purpose, such as sex."  *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).  If circumstantial evidence is used in support of a direct claim, it "must point directly to a discriminatory reason for the employer's action."  *Id.* (quotation omitted).  Even circumstantial evidence of bigotry on the part of the decision maker is not enough without this causal link – "there must be a real link between the bigotry and an adverse employment action."  *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

To survive summary judgment under the indirect method, a plaintiff ordinarily must present evidence from which a jury reasonably could find that (1) she was a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated

6

employees outside the protected class were treated more favorably. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008). If the employee can make this prima facie showing, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for its actions. If it does so, the employee bears the burden to submit evidence from a jury reasonably could find that the employer's proffered reasons are a pretext – a cover story – for unlawful sex discrimination. *Id.*

  a. **National origin**

In response to ENH's motion for summary judgment, Adler does not contend that she can meet her burden with respect to her national origin claim under the indirect method. Instead, she focuses on the anti-American comments made by BCTRC employees and the fact that she "was an American citizen who spoke English fluently and made no secret about the pride she took in her country and her citizenship." Adler Resp. at 4. Adler's national origin claim fails, however, because the United States is not her country of origin. Rather, the United States is the country of which she is a citizen. Title VII's prohibition against discrimination on the basis for national origin does not include discrimination based on citizenship. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973) ("Aliens are protected from illegal discrimination under [Title VII], but nothing in [Title VII] makes it illegal to discriminate on the basis of citizenship or alienage."); *Fortino v. Quasar Co.*, 950 F.2d 389, 392 (7th Cir. 1991).

To the extent that BCTRC employees made disparaging comments about Americans, those comments did not implicate Adler's national origin. "The term 'national origin' on its face refers to the country where a person was born, or, more

broadly, the country from which his or her ancestors came." *Espinoza*, 414 U.S. at 88. Adler was born in Ukraine (part of the former Union of Soviet Socialist Republics). No disparaging comments were made regarding Ukraine or the former Soviet Union. To the extent that any comments were directed at Adler's status as a United States citizen, those comments do not implicate Title VII.

Adler contends that a reasonable jury could find that BCTRC employees directed anti-American comments at her because "they perceived her as of American national-origin." Adler Resp. at 5. Adler does not, however, cite any authority permitting a claim under Title VII based on "perceived" national origin. Several district courts have rejected Title VII claims based on an allegation that the plaintiff was perceived to be in a protected class, reasoning that when Congress intended to protect such persons, it has done so explicitly, for example in the Americans with Disability Act and the Rehabilitation Act. *See, e.g.*, *Lewis v. N. Gen. Hosp.*, 502 F. Supp. 2d 390, 401 (S.D.N.Y. 2007); *Butler v. Potter*, 345 F. Supp. 2d 844, 850 (E.D. Tenn. 2004); *Lopez-Galvan v. Mens Wearhouse*, No. 3:06 CV 537, 2008 WL 2705604, at *7 (W.D.N.C. July 10, 2008); *Uddin v. Universal Avionics Sys. Corp.*, No. 1:05 CV 1115, 2006 WL 1835291, at * 6 (N.D. Ga. June 30, 2006). Title VII contains no provision for those wrongly perceived to be of a certain national origin. *See* 42 U.S.C. § 2000e-2. Though the issue is not free from doubt, Adler has not made a persuasive case for recognition of a claim of this type. Accordingly, ENH is entitled to summary judgment on Adler's claim for national origin discrimination.

**b.     Sex and age**

ENH argues in its motion that Adler cannot make out a claim for sex or age discrimination under the direct method of proof.  In response, Adler argues her case under the indirect method.  In one section of her brief, however, she makes an argument that arguably could be construed as relying on a direct method/circumstantial evidence analysis.  The Court will address that point after discussing whether Adler can make out a claim using the indirect method of proof.  But that aside, Adler has abandoned any argument that she can prove employment discrimination under the direct method.  *See Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (noting that arguments not presented in response to a summary judgment motion are forfeited); *Scott-Riley v. Mullins Food Prods., Inc.*, 391 F. Supp. 2d 707, 718 (N.D. Ill. 2005).

It is undisputed that Adler was a member of two protected classes, female and over the age of forty, and that she suffered an adverse employment action when she was terminated.  The parties' disputes concern whether Adler was meeting ENH's legitimate expectations and whether she was treated less favorably than another similarly situated employee.

**i.     ENH's legitimate expectations**

Under the burden-shifting test, Adler need only produce "some evidence" that she was meeting the Department's legitimate expectations.  *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 743 (7th Cir. 1999).  Adler has met that burden.  ENH raises only one performance deficiency; Adler allegedly failed to adequately document the illness

9

that caused her to miss work in November 2005 and refused to cooperate with ENH's investigation. A reasonable jury could conclude, however, that Adler was sick from November 7 to 30, 2005 and that she did cooperate with ENH's investigation. Adler provided a note from her doctor stating she could not work during that period. ENH argues that the note is not credible, contending it was provided by a friend and questioning whether Adler was actually examined by a doctor. The legitimacy of Adler's illness is an issue for the jury that the Court cannot resolve on summary judgment. Similarly, Adler did take some actions to cooperate with ENH's investigation – she authorized the release of her medical records and referred ENH to her attorney. She arguably did not cooperate to the extent required by ENH policy, but that is a determination the jury must make. On the evidence presented, a reasonable jury could conclude that Adler was meeting ENH's legitimate expectations.

### ii. Similarly situated employees

The Seventh Circuit has stated that plaintiffs do not face a "hyper-technical" burden of proving that similarly situated employees are "identical" to themselves to satisfy the *McDonnell Douglas* burden-shifting test. *Gates*, 513 F.3d at 690 (emphasis omitted) (citation omitted). As a general rule, however, a plaintiff must show that the similarly situated employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct . . . ." *Id.* (quotation omitted).

Adler fails to make out a prima facie case of discrimination because she has not identified a single similarly situated employee, either at BCTRC specifically or ENH generally. Adler claims that she was the only employee at BCTRC whose sex, appearance, or age were discussed, in essence arguing that she was similarly situated

10

to every BCTRC employee and they were not subject to the same treatment as her. This reasoning, however, misses the thrust of the similarly situated employee requirement. In the context of employee discipline, including employment termination, a plaintiff must show that another employee engaged in similar (though not necessarily identical) conduct but was dealt with less severely. *Adams*, 324 F.3d at 940. In *Adams*, the Seventh Circuit affirmed a grant of summary judgment because the plaintiff, who was terminated after her employer accused of theft on the job, failed to identify any other employee who was not terminated after engaging in the same type of conduct. *Id.* In this case, Adler does not identify a single employee who was not terminated after missing work for an extended period, failing to adequately document her absence, or failing to cooperate in an ENH investigation. Indeed, Adler has not even addressed this point in her response to ENH's motion. For this reason, no reasonable jury could find that she meets this requirement of a prima facie case.

### iii.    Circumstantial evidence argument

Adler's identification of every BCTRC employee as similarly situated conceivably could be construed as an attempt to prove her sex and age discrimination claims under the direct method by relying on circumstantial evidence. Adler's contention is that offensive comments were made about her on these bases but that no such comments were made about any other employee. Assuming that is what Adler is arguing, she cannot support a claim under this method of proof. Even though Adler has presented evidence of inappropriate and arguably bigoted comments, "bigotry, *per se*, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real

11

link between the bigotry and an adverse employment action." *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). To support a circumstantial case under the direct method, comments by a decision maker must be made "(1) around the time of, and (2) in reference to the adverse employment action complained of." *Id.* The comments Adler relies on were not made by the alleged decision makers (Sheridan and Lupu), did not implicate the matters claimed to underlie Adler's termination, and were made more than four months before her termination. No reasonable jury could find that Adler was terminated on the basis of her age or sex based on the circumstantial evidence submitted by Adler.

For these reasons, ENH is entitled to summary judgment on Adler's claims that she was terminated based on her sex or age.

**2.      Hostile environment**

Adler claims that she was subjected to a hostile working environment due to her sex and her age.[2] To survive summary judgment on this claim, Adler must present evidence from which a jury reasonably could find that she was subject to unwelcome harassment based on her sex or age that "was severe or pervasive so as to alter the conditions of [her] work environment" and a basis for ENH's liability. *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004).[3] Adler must also "show that the work

---

[2] Though Adler's response also makes reference to her national origin, that cannot be the basis for her hostile environment claim for the reasons stated with respect to her termination claim.

[3] The Seventh Circuit has assumed a hostile work environment claim is cognizable under the ADEA, though it has not expressly held so. *E.g.*, *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005).

12

environment was both subjectively and objectively hostile." *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001). This can be accomplished through evidence of "one extremely serious act . . . [or] a series of less severe acts." *Id.* Considering the evidence in the light most favorable to Adler, a reasonable jury could conclude that she was subjected to a hostile working environment during the time she worked at BCTRC.

As detailed above, a number of ENH employees made highly offensive comments to Adler implicating both her age and sex. ENH attempts to characterize these incidents as isolated and insignificant. The comments, however, occurred repeatedly over a period of time and were directed specifically at Adler, as opposed to being directed towards a group of people in general. Even after the harassing comments ceased, they were replaced by a series of acts in which Menendez and others at BCTRC allegedly made it increasingly difficult, if not impossible, for Adler to do her job. A reasonable jury could conclude that the environment at BCTRC was objectively hostile. Adler has also presented evidence that the environment at BCTRC was subjectively hostile; indeed, she says that at times it was so bad that she was unable to perform her duties.

ENH contends, citing *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 952-53 (7th Cir. 2005), that even if there is a question of fact regarding the existence of a hostile environment, it is still entitled to summary judgment because ENH took prompt and appropriate corrective action. *Cerros* makes clear that, under Supreme Court precedent, an employer that takes prompt corrective action is not liable if the hostile environment was created based on the actions of a plaintiffs' coworkers. *Id.* (citing

13

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)). In the current case, however, the individual that engaged in the most severe harassing conduct, Menendez, was, by ENH's own admission, one of Adler's supervisors. An employer can still avoid hostile environment liability in that situation if it "exercised reasonable care to prevent and correct any harassing behavior" and "the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities." *Id.* at 952 (quotation omitted). ENH has not argued, however, that it is entitled to summary judgment on this basis and, in any event, it is undisputed that Adler did attempt to take advantage of ENH's mechanism to report and prevent harassment.

**3.    Retaliation**

Like her termination claim, Adler can prove retaliation in violation of Title VII under the direct or indirect methods. *Tomanovich v. Ind. Dep't of Trans.*, 457 F.3d 656, 663 (7th Cir. 2006). Adler does not state whether she is attempting to defeat ENH's motion on her retaliation claim under the direct method or the *McDonnell Douglas* burden-shifting test. Because she does not address any of the burden-shifting elements, the Court will consider whether she has met her obligation under the direct method.

Under the direct method of proof as applied to retaliation claims, a plaintiff must show (1) participation in a protected activity; (2) an adverse employment action; and (3) a causal connection between them. *Id.* There is no dispute that Adler engaged in protected activities on several occasions by complaining to ENH's HR department, the first complaint occurring on August 31, 2005.

There are two types of potentially adverse employment actions in this case. The first is the manner in which Adler was treated by her supervisors, Lupu and Menendez, after she made her first complaint to HR on August 31, 2005. As detailed above, Menendez and Lupu allegedly increased Adler's workload, withheld training and information necessary to complete her job, and refused, on some occasions, to give instructions in a language that Adler could understand. ENH contends that any of these, if proven, are not severe enough to support a retaliation claim.

Actions falling short of "ultimate employment decisions" can form the basis for a retaliation claim if they are objectively "likely to deter victims of discrimination" from making complaints about their treatment. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (quotations omitted). The Supreme Court stated this "standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. The evidence produced by Adler would allow a reasonable jury to find that her supervisors retaliated against her following her complaints to HR. This includes evidence that, if believed, would allow a jury to find that Lupu and Menendez made it difficult if not impossible for Adler to perform her job. In the context of the work environment at BCTRC, Menendez and Lupu's alleged actions may qualify as adverse employment actions.

The second adverse employment action is Adler's termination. ENH contends that Adler is precluded from relying on her termination claim as a basis for retaliation because it was not listed in her EEOC charge. Adler filed her charge with the EEOC on November 8, 2005, though she was not terminated, with retroactive effect, until December 27, 2005. Adler's EEOC charge included a charge of retaliation based on

15

her treatment at BCTRC occurring after she had first complained to HR.  "A plaintiff may be allowed to include [in an action in the district court] acts that occurred after filing with the EEOC if the subsequent acts fall within the scope of the EEOC charge."  *More v. R&L Carriers, Inc.*, No. 00 C 5583, 2002 WL 1632206, at *4 (N.D. Ill. July 23, 2002) (citing *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)).  The Seventh Circuit "has adopted a liberal standard for reviewing the scope of an EEOC charge and has held that [a]ll claims of discrimination are cognizable that are like or reasonably related to the allegations of the charge and growing out of such allegations."  *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005).  Subsequent conduct is reasonably related to allegations in an EEOC charge if it would have been encompassed by the EEOC's investigation.  *See Washington v. Jenny Craig Weight Loss Centers, Inc.*, 3 F. Supp. 2d 951, 947-48 (N.D. Ill. 1998).  That appears to be the case here; the only action not included in the scope of the EEOC charge was the ultimate termination, which flowed from the matters she alleged in the charge.  Accordingly, Adler's termination can serve as a basis for her retaliation claim.

Finally, Adler has adduced evidence from which a jury could find a causal connection between her complaints to HR and the adverse employment actions she allegedly suffered.  Adler claims that Lupu and Menendez began retaliating against her within a month of her complaint to HR.  ENH correctly notes that temporal proximity ordinarily is not enough to establish causation.  *E.g.*, *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (7th Cir. 2007).  Other facts, however, could enable a jury to find causation in this case, including Lupu's alleged sudden change in her opinion of

16

Adler's performance, the multiple offers made to Adler to compensate her if she left ENH, and Lupu's request that HR immediately remove Adler from BCTRC. Taken together, these facts would enable a reasonable jury to find causation in this case. *See Lewis v. City of Chicago*, 496 F.3d 645, 655-56 (7th Cir. 2007).

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion for summary judgment [docket no. 20] with respect to plaintiff's gender, national origin, and age-based termination claims (parts of counts 1, 2, and 3) and as to the national-origin-based hostile environment claim (the rest of count 2) but denies summary judgment with respect to plaintiff's claims pertaining to sex and age discrimination (the rest of counts 1 and 3) and her retaliation claim (count 4). The case is set for a status hearing on January 6, 2009 at 9:30 a.m. for the purpose of setting a trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 16, 2008